IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Elizabeth Ann Crotty, and James Kenneth Orzech, | ) ) ) | Civil Docket No.: 4:15-cv-04042-RBH |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | **O R D E R** |
| Windjammer Village of Little River, South Carolina, Property Owners' Association, Inc., | ) ) ) ) | |
| Defendants. | ) ) ) | |

On or about September 29, 2015, Elizabeth Ann Crotty and Kenneth Orzech (the "Plaintiffs") filed a Complaint against Windjammer Village of Little River, South Carolina Property Owners' Association, Inc. (the "Defendant" or "Windjammer Village"), pursuant to the Federal Fair Housing Act ("FHA"), alleging that Defendant failed to allow Plaintiff Crotty a reasonable accommodation to park near the front door of her residence due to her disabilities. [ECF #1, p. 4]. According to the Complaint, in 2002 Plaintiff Crotty purchased property at 2148 Gamecock Circle, Little River, SC (hereinafter, "the Property"). Plaintiff Orzech became a property owner of the Property by joint tenancy in 2005. According to Plaintiffs, in 2009, Plaintiff Crotty sought a variance from a Windjammer Village policy allegedly preventing her from parking directly in front of the Property near the front door. [ECF #1, p. 7]. Plaintiffs allege Defendant refused to accommodate such a request. Plaintiffs allege Plaintiff Crotty was forced to move to another residence within the neighborhood because Defendant would not provide the requested accommodation. [ECF #1, p. 5]. Plaintiffs contend Defendant therefore

discriminated against them in violation of state and federal fair housing laws. [ECF #1, pp. 9-10]. This matter is presently before the Court on Defendant's Motion for Summary Judgment [ECF #47], as well as Plaintiffs' Motion for Urgent Petition for an Injunction. [ECF #57].

In accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02 (D.S.C.) this matter was referred to a Magistrate Judge for pretrial handling. This matter is now before the Court after issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Thomas E. Rogers, III. [ECF #62]. In the R&R, the Magistrate Judge recommends granting Defendant's Motion for Summary Judgment in its entirety. This Court has had the opportunity to thoroughly review all pleadings and arguments of counsel, and this matter is now properly before the Court for review.[1] After reviewing the pleadings of record, this Court is granting summary judgment in favor of Defendant. The granting of summary judgment renders the arguments raised within the motion seeking an injunction moot.

## Standard of Review

### I. Review of the Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The district court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## II. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986))**.**

In this case, Defendant bears the "initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If Defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48). Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)). The nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989).

## Statement of Facts

This Court carefully reviewed Plaintiffs' pleadings, as well as the history of the dispute,

provided as an attachment to their response brief. To the fullest extent possible, this Court has relied upon the facts as presented by Plaintiffs in considering their objections to the R&R.[2] As aptly pointed out by Plaintiffs, the parties involved in this litigation have a long history. On May 13, 2002, Plaintiff Crotty and Defendant entered into a Contract of Sale for the purchase of a piece of property that had been offered for sale to members of the Defendant POA. The Property, located at 2148 Gamecock Circle, included a common area tract of land with a single story bathhouse erected upon it that was owned by Defendant. [ECF #47-2, Ex. A].[3]

A few years earlier, Plaintiff Crotty had moved into the neighborhood known as Windjammer Village after taking over her parent's home located at 2121 Brunswick Circle. [ECF #51-2, p. 3]. The Contract of Sale for the Property contained the following language: "[i]t is further agreed that access to this property shall be from Gamecock Circle. This paragraph shall survive the closing." [ECF #47, Ex. B]. In other words, at the time Defendant offered the property for sale, the contract explicitly contained this restriction. Plaintiffs acknowledge this language can be found in the Contract of Sale and assert that this language is part of the controversy between Plaintiffs and Defendant. [ECF #51-2, p. 4].[4] Plaintiffs also do not appear

---

[2]Plaintiffs have asserted that the R&R is "inherently flawed and unfair" because the Magistrate Judge did not consider their version of the facts. [ECF #64, pp. 2-3]. The facts as alleged in the R&R are from statements and documents provided for in Plaintiffs' response to the motion for summary judgment.

[3]The deed granting title of the Property to Plaintiff Crotty was recorded in Deed Book 2499, Page 0759, Register of Deeds for Horry County. [ECF #47, Ex. C]. Plaintiff Orzech acquired joint title to the property, as reflected by a warranty deed dated September 15, 2005. [ECF #47, Ex. D]. According to Plaintiffs, their home is referred to as the " B00 House," which is indicated on a plat of the Property. [ECF #51-2, pp. 1-2].

[4]This Court notes that meaning of the contract language has previously been addressed by a state court in a previous order permanently prohibiting Plaintiffs from utilizing the paved driveway to access their property, or as a parking area, or as a driveway. [ECF #47-10, Ex. 10].

to dispute that there is a "reserved common area" with an access road along its boundary (identified as the "paved driveway") with mailboxes where residents from three different circles receive their mail. [ECF #51-2, p. 2]. Nonetheless, Plaintiffs contend that from approximately May 2002 through May 2007, Plaintiffs parked near the front door of their home, despite intermittent resistance from Defendant; that is to say, soon after Plaintiff Crotty purchased the Property, she alleges Defendant resisted her efforts, and later Plaintiff Orzech's efforts, to park directly near the front of the door of her home. [ECF #51-6, p. 3].[5] Plaintiffs' outline of events do not reflect that these initial efforts to park near the front door were based upon a need due to a disability. [ECF #51-6, pp. 3-4].

On January 30, 2009, Plaintiff Crotty sent an email advising Defendant that she would be parking directly in front of her home following a hospital visit for a broken knee. [ECF #51-6, p. 19]. Defendant responded on February 19, 2009, requesting a doctor's note outlining how long Plaintiff Crotty would need for rehabiliation. [ECF #51-6, p. 20]. Plaintiff Crotty complied with this request and provided a note indicating she would need three months to rehabilitate. [ECF #51-6, p. 5]. Plaintiffs assert that Defendant granted her request; however in February 2009, Plaintiff

---

[5] Plaintiffs acknowledge that on or about June 10, 2006, Defendant sent Plaintiffs a letter advising them they "must immediately comply with the provisions of the sales agreement." [ECF #51-6, p. 16]. Specifically, the letter to Plaintiffs states, "you must access your property from Gamecock Circle." [ECF #51-6, p. 16]. On June 12, 2006, Plaintiff Crotty apparently responded in writing, explaining, "[w]e immediately removed our cars, but we retain the right to park anywhere on our property when it suits us, as does any other WJV resident. The sales agreement is vague at best on this point." [ECF #51-6, p. 17]. Within this letter, Plaintiff states that she would be contacting the South Carolina Protection and Advocacy for People with Disabilities, Inc., regarding the continued "harassment" and for Defendant's denial of her request to park in front of her home. [ECF #51-6, p. 18]

Crotty apparently moved from the Property. [ECF #51-6, p. 5].[6] On June 19, 2009, Plaintiff Crotty again advised Defendant that she wished to park in front of the Property "for the remainder of my ownership" due to a worsening back condition. [ECF #51-6, p. 23]. On July 7, 2009, Defendant's counsel informed Plaintiff Crotty's counsel that Defendant would not allow her to permanently park in front of her home, as it was Defendant's position that this request would be a violation of the use of the common area within the neighborhood. [ECF #51-6, p. 27]. Plaintiff Crotty therefore alleges that she was forced to seek other housing due to Defendant's ongoing refusal to accommodate her parking requests. [ECF #1, p. 7]. In fact, Plaintiffs state that Plaintiff Crotty's condition did not improve until well after her knee replacement surgery in March of 2014, but she was "still living on Brunswick Circle," rather than at the Property. [ECF #51, p. 14].

On October 28, 2009, Plaintiffs filed a verified Complaint in the Court of Common Pleas of Horry County, Civil Action No. 2009-CP-26-10523, seeking to enjoin Defendant from removing the paved driveway that currently provided access to the mailboxes. [ECF #51-6, p. 36]. The paved driveway is a single-width, one way road, and is used consistently for residents to access their mailboxes. [ECF #58, p. 8]. This matter was resolved via a state court final order dated August 3, 2011, which permanently enjoined Defendant from closing the paved driveway; however, it also provided that Plaintiffs and their heirs and assigns were prohibited from using the paved driveway to access their property, or as a parking area or driveway for vehicles. [ECF

---

[6] Plaintiffs state that in February of 2009, Plaintiff Crotty "moved from her residence of seven years on Gamecock Circle to her rental home on Brunswick Circle, also in Windjammer Village." [ECF #51, p. 13].

#47-10, Ex. I].[7]

On December 11, 2012, Plaintiff Crotty dual-filed a verified Complaint with the U.S. Department of Housing and Urban Development ("HUD"), as well as the South Carolina Human Affairs Commission ("SCHAC"), alleging Defendant failed to grant her a reasonable accommodation based upon her physical disability in violation of the South Carolina Fair Housing Law ("SCFHL"). [ECF #51-6, p. 13]. On September 30, 2014, this matter was resolved in state court via a Consent Order of Dismissal with Reservation of Rights for Elizabeth Crotty, which provided that the statute of limitations shall be tolled as of August 27, 2013, for a period of one year. [ECF #47-12, Ex. K]. However, it also provided that the statute of limitations would not be tolled for any period of time elapsing prior to that date and reserved the right of Defendant to assert the affirmative defense that the applicable statute of limitations ran prior to August 27, 2013. [ECF #47-12, Ex. K]. Plaintiffs commenced this current action in federal court on September 29, 2015. [ECF #1].

On September 1, 2017, Defendant filed a Motion for Summary Judgment arguing Plaintiffs' claims must be dismissed as a matter of law because the statute of limitations had run as of July 7, 2009, the date upon which Defendant denied Plaintiffs' request to permanently park near to the front door of the Property.[8] Plaintiffs responded to this motion on October 13, 2017, arguing that August 3, 2011, the date upon which the state court order was entered, is the relevant date for

---

[7] This Order also states that it should not be construed as addressing the American Disabilities Act, despite the fact that "Plaintiffs have suggested and presented to the Court that treatment of Plaintiff Crotty by the Defendant has violated the Amercan Disabilities Act." [ECF #47-10, Ex. I].

[8] As an additional matter, Defendant argues that the claims are subject to the doctrine of *res judicata*, and that Plaintiff Orzech fails to state a claim for relief because he has not alleged any particular personal harm or other action by Defendant that directly subjects Plaintiff Orzech to any alleged harm. [ECF #47-1, p. 22].

purposes of the statute of limitations. [ECF #51, p. 15]. On March 7, 2018, several months after this current lawsuit was filed, Plaintiffs filed a Motion for Urgent Petition for an Injunction to allow Plaintiff Crotty to park near her front door following a scheduled knee surgery. [ECF #57]. Defendant filed a response to this motion on March 21, 2018. [ECF #58]. In the response, Defendant argues that Plaintiff is not requesting a reasonable accommodation, but instead seeks permission to utilize the paved driveway to access the property and use Defendant's property as a drivway and parking space. [ECF #58, p. 7]. On July 31, 2018, the Magistrate Judge issued his Report & Recommendation recommending this Court grant summary judgment in favor of Defendants. [ECF #62]. Plaintiffs filed their Objection to the R&R on August 17, 2018. [ECF #64]. Defendant filed its reply on August 31, 2018. [ECF #66]. Subsequently, Plaintiffs filed a supplement to their Objection, further outlining Plaintiff Crotty's medical issues, and for the first time argue that the alleged repeated requests to park in front of the Property reflect a continuing violation of the FHA. [ECF #67, p. 4].[9]

## Discussion

### A. Summary Judgment Motion

Defendant initially argues that Plaintiff Orzech's claims are subject to summary judgment because he has failed to allege any particular harm to him personally through the alleged actions or inactions on the part of Defendant. The Complaint alleges that Defendant has failed to reasonably accommodate Plaintiff Crotty's disabilities. [ECF #1, p. 4]. Plaintiff Orzech is named as an additional "aggrieved party." [ECF #1, p. 5]. The Complaint alleges that Plaintiff Orzech

---

[9]Notably, Plaintiffs admit that they have not lived at this location from 2009 through 2017 but instead have resided at another location in the same area.

has been injured because Defendant's actions have vastly increased the expenses and continued occupation of the Property. [ECF #1, p. 6]. Defendant argues that because Plaintiff Orzech has failed to allege any particular or personal harm under the FHA, nor has standing under the FHA by statute or regulation to bring suit, his claims must fail. Plaintiffs have not responded to this argument within their response brief, and the Magistrate Judge did not make a recommendation as to this claim. However, because this Court agrees with the Magistrate Judge that the claims are time-barred, this Court declines to address whether Plaintiff Orzech has any stand-alone claims, as alleged in the Complaint.

This Court is mindful that as Plaintiffs as *pro se* litigants, the Court should liberally construe their claims. *United States v. Wilson*, 699 F.3d 789 797 (4th Cir. 2012). However, this Court may not become the advocate of the pro se litigant. *Id.* With this liberal construction in mind, it appears Plaintiffs' central grievance is that Defendant refuses to allow a reasonable accommodation to allow Plaintiff Crotty to park directly in front of her door at the Property due to her disabilities. [ECF #1, p. 7]. It does not appear to be in dispute that Plaintiff Crotty has a well-documented series of health problems. Instead, Defendant argues that summary judgment should be granted for three reasons: (1) the two year statute of limitations pursuant to the FHA has expired; (2) the doctrine of *res judicata* applies; and (3) Plaintiffs have failed to state a claim for relief as to Plaintiff Orzech. [ECF #47].[10] The Magistrate Judge recommends granting summary judgment in favor of Defendant because the statute of limitations on Plaintiffs' claims have

---

[10] Plaintiffs did not provide a substantive response to Defendant's argument that Plaintiff Orzech has failed to state a claim for relief in the Complaint.

expired.[11]  Plaintiffs objected to this recommendation and argue that it is impossible to calculate the statute of limitations on a case "as dynamic, lengthy, fluid, complex, nasty and convoluted as this one." [ECF #64, p. 9].[12]

The parties both argue that the statute of limitations found in the Fair Housing Act, 42 U.S.C. § 3601 *et. al.* govern this matter.  The provision in the FHA that both parties rely upon in analyzing the statute of limitations defense provides:

> (a)(1)(A) An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.
>
> (a)(1)(B) The computation of such a 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice. This subparagraph does not apply to actions arising from a breach of a conciliation agreement.

42 U.S.C. § 3613(a)(1).[13] The two year statute of limitations on FHA claims runs from the last asserted occurrence of a discriminatory housing practice. *See Havens Realty Corp. v. Coleman*,

---

[11] In the R&R, the Magistrate Judge did not expressly consider the other arguments raised by Defendant regarding additional grounds for summary judgment.

[12] Plaintiffs further argue that the confusion surrounding the Property stems from Defendant's misinterpretation of the term "access" in the sales contract. [ECF #64, p. 9]. This matter appears to have been resolved by the state court judge in the issuance of his order dated August 3, 2011, despite Plaintiffs' insistence that they read the sales contract to have a different meaning.

[13] This Court notes that in responding to the request for an injunction, Defendant questions whether the FHA applies to the merits of the case. [ECF #58, p. 6]. Nonetheless, Plaintiffs bring their claims pursuant to the FHA, and Defendant does not dispute the applicability of the FHA as the appropriate limitations period for these claims.

455 U.S. 363, 380-81 (1982); *see generally North Dakota Fair Housing Council, Inc. v. Allen*, 319 F. Supp. 2d 972, 979 (D.N.D. May 27, 2004). Defendant argues that the statute of limitations began to run on July 7, 2009, the date when Defendant denied Plaintiffs' indefinite request to park in front of her home due to her disability. Defendant argues this is the relevant date to determine the commencement of the statute of limitations because it is the date upon which Plaintiffs became aware of Defendant's position that she was not entitled to the requested relief. Plaintiffs refute that this date is relevant for the purposes of calculating the statute of limitations. Plaintiffs argue that they did not experience a problem in acquiring a "reasonable accommodation" until August 3, 2011. This date is the date upon which the state court order was entered resolving a lawsuit Plaintiffs brought in state court against Defendant. The state court order prevents Plaintiffs and their heirs and assigns from using the paved driveway to access their property, or as a parking area or driveway for vehicles.[14]

This Court agrees with the Magistrate Judge that on July 7, 2009, the statute of limitations began to run on Plaintiffs' claims. First, it is clear that by this date, Plaintiff was on notice of any alleged denial to accommodate her parking request based upon a disability. *See A Society Without A Name v. Virginia*, 655 F.3d 342, 348-49 (4th Cir. 2011) (explaining that the limitations period for a civil rights claim begins to run when the plaintiff has reason to know of the injury which is the basis of the action and thereafter finding FHA claims time-barred two years after operation of a homeless center that was the subject to the dispute). Plaintiffs state that after Plaintiff Crotty broke her right knee in January 2009, she received temporary permission from

---

[14] See page 7 of this Order.

Defendant to cross a common area and park near her front door, but when she informed Defendant about her knee and back problems qualifying her as disabled, Defendant "staunchly refused to extend her approval for parking." [ECF #51, p. 5]. Further, Plaintiffs admit that Plaintiff Crotty sought other housing at this time due to the refusal to accommodate her disabilities. *See North Dakota Fair Housing Council, Inc. v. Allen*, 319 F. Supp.2d 972, 979 (D.N.D. May 27, 2004) (considering the statute of limitations under the FHA and determining that the statute of limitations, without the benefit of tolling, would have expired two years after a tenant moved from an apartment complex).

Accordingly, the two year statute of limitations would have expired by the time this lawsuit was filed. Again, on July 7, 2009, Defendant denied her request. However, even assuming that that August 3, 2011 is the appropriate date to calculate the statute of limitations, Plaintiffs claims are still time-barred. More than two years passed from August 3, 2011,[15] the date of the state court order decision finding that Plaintiffs were permanently prohibited by a court order from utilizing the paved driveway area for parking, until September 29, 2015, the date this lawsuit was filed. As also noted, Plaintiffs filed a complaint with the administrative agencies of HUD and SCHAC on December 11, 2012. Again, the federal lawsuit was filed on September 29, 2015.

Within their objections, Plaintiffs suggest that because there were "nearly continuous"

---

[15] Plaintiffs argued in their response that August 3, 2011 was the significant date for the computation of the statute of limitations. Specifically they argued, "[t]hat date is significant to this case in the calculation for the Statute of Limitations." [ECF #51, p. 15]. Further, Plaintiffs stated, "[T]he bottom line is that the elapsed time between Aug. 3, 2011 and either December 11, 2012 or Feb. 12, 2013 is less that two years, so the 'statute of limitations' under the Fair Housing Act was met." [ECF #51-6, p. 14]. Plaintiffs further indicated that August 3, 2011 was the "true" date from which to determine whether or not Ms. Crotty filed suit under the Fair Housing Act within the two year statute of limitations. This Court notes that the state court order was actually filed two days later, on August 5, 2011.

administrative proceedings over the alleged discriminatory housing practices in one form or another from late 2009 to present day, the two year statute of limitations has not yet lapsed. Therefore, this Court has considered whether any tolling period applies in this case pursuant to 42 U.S.C. § 3613(a)(1)(B), which states that the computation of the statute of limitations shall not include any time during which an administrative proceeding is pending. However, after applying the applicable time for tolling during the pendency of the HUD action, this current lawsuit was still filed outside of the two year statute of limitations.[16] On December 11, 2012, Plaintiff Crotty dual-filed a complaint with both HUD and SCHAC, alleging violations of the South Carolina Fair Housing Law by failing to grant a reasonable accommodation based upon her physical disability.[17]

By December 11, 2012, approximately one year and four months had elapsed from the state court court order prohibiting Plaintiffs from parking near their front door. On September 30, 2014, the parties filed a Consent Order dismissing that action. Assuming that the statute of limitations should not include any time period that this lawsuit was pending, Plaintiffs still did not file this lawsuit in federal court within the two year statute of limitations because another 364 days passed from September 30, 2014 until this lawsuit was filed (September 29, 2015), in addition to the one year and four months of elapsed time from August 3, 2011 until December 11, 2012. Thus, even

---

[16]The Magistrate Judge determined that neither the tolling provision set forth in 42 U.S.C. § 3613(a)(1)(B) nor the tolling allowed in the consent order applies to the FHA claims brought in this lawsuit because Plaintiff Crotty filed her administrative claim with HUD and the SCHAC under the SCFHL, not the FHA. Some courts have determined that the filing of a complaint with the United States Department of Housing and Urban Development serves to toll the limitations period found in the Fair Housing Act. *See North Dakota Fair Housing Council, Inc. v. Allen*, 319 F. Supp. 2d 972, 979 (D.N.D. May 27, 2004). Even giving Plaintiffs the benefit of the tolling provision, contrary to the recommendation of the Magistrate Judge, it is still untimely.

[17]This Court notes that it was initially only Plaintiff Crotty, and not Plaintiff Orzech, who was involved in this lawsuit and subsequent Consent Order.

affording Plaintiffs the benefit of tolling for this administrative proceeding, the lawsuit was still untimely filed.[18]

This Court has additionally considered a more recent argument advanced by Plaintiffs in the supplement to their Objection filed on September 10, 2018. Plaintiffs now argue that based upon circumstances occurring from March through June 2018 of this year, March 29, 2018 should be the date by which to determine the statute of limitations based upon a "continuing violation" theory.[19] As it applies to the FHA, the Fourth Circuit has held that a "continuing violation" is occasioned by continual unlawful acts, as opposed to continual ill effects, which arise from an original violation. *See Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) (explaining the difference between a continuing violation and the continuing effects of a past violation); *see generally Nat'l Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 2011); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 189 (4th Cir. 1999). Here, Plaintiffs' inability to park in front of the Property is a continued effect of Defendant's denial of Plaintiff's request for a reasonable accommodation in July of 2009. As pointed out by Defendant, Plaintiffs

---

[18]Nor does the tolling period provided for in the Consent Order prevent this lawsuit from being subject to the expiration of the statute of limitations. The Consent Order provides: "the statute of limitations shall be tolled as of August 27, 2013, the date the lawsuit was filed, and for a period of one year. The statute of limitations shall not be tolled; however, for any period of time elapsing prior to August 27, 2013." [ECF #47-12, Ex. K]. The Consent Order also specifically reserved Defendant's right to assert the statute of limitations as a defense. [ECF #47-12, Ex. K]. Prior to August 27, 2013, well over two years had elapsed since Plaintiff admittedly suffered from the denial of a reasonable accommodation, and nearly another year elapsed between September 30, 2014 and September 29, 2015, the date this lawsuit was filed. Further, this time period ran concurrently to the tolling period between December 11, 2012 and the entry of the Consent Order dismissing that case on September 30, 2014.

[19]This new date occurred two years after this Complaint was filed. While the events that occurred on this date may, in theory, be argued to constitute a discrete act, it cannot revive any time-barred claims that form the basis of this instant action.

now seek to set aside a prohibition that was expressly upheld by a state court order in a previous lawsuit, rather than asking this Court to prevent the application of an unfair policy or practice of Defendant. Plaintiffs have not presented any evidence or identified any specific policy or practice in violation of the FHA that Defendant has relied upon in denying Plaintiffs the ability to permanently park in front of the Property. *See United Air Lines v. Evans*, 431 U.S. 553, 558 (1977) (discussing a Title VII claim and explaining that the emphasis of a continuing violation should be whether any present violation exists). Nor have Plaintiffs provided any evidence or proof to establish that Defendant has engaged in a continuing practice of denying reasonable access or accommodations to individuals with disabilities, aside from this disagreement related to the parking in front of the front door of the Property. *See Jersey Heights*, 174 F.3d at 189 (explaining that the plaintiffs' arguments related to the ongoing effects of a decision, as opposed to discrete acts of discrimination which fell within the limitations period). In any event, the Fourth Circuit has held that the continuing violation doctrine applies to claims based upon an ongoing policy or pattern of discrimination, rather than discrete acts of discrimination. *Hill v. Hampstead Lester Morton Court Partners, LP*, 581 Fed. Appx. 178, 180-181 (4th Cir. 2014). In *Hill*, multiple requests for accommodations were considered discrete acts of discrimination, and the Fourth Circuit determined that claims premised upon acts which predated the limitations period were time barred. *Id.* While discrete acts that may have occurred after the statute of limitations period has run might, in theory, provide an independent basis for relief, they will not revive already otherwise time-barred claims. This Court finds it worth noting that Plaintiffs admit, despite the state court order, they have, at times, continued to park near the front of the door of the

Property, calling into question whether the harm has been continuous. [ECF #64, p. 7]. Thus, as the Magistrate Judge points out, a failure to provide a requested accommodation, as alleged by Plaintiffs, constitutes a "discrete act," rather than a "continuing violation" or an ongoing omission.

In liberally construing Plaintiffs' arguments, this Court has considered whether Plaintiffs' alleged numerous requests to park in front of the Property could be construed as an argument that a discrete act occurred within the statute of limitations period. However, for the reasons that follow, this Court is not persuaded by this argument. First, in response to a motion for summary judgment, a plaintiff must provide some evidence, beyond their own allegations, to support a finding that there exists a material issue of fact in the case. Plaintiffs do not provide any evidence, beyond their own allegations, that *after* July 7, 2009, Defendant specifically denied a subsequent request for a parking accommodation prior to the filing of this lawsuit on September 29, 2015.[20] Therefore, this Court finds that Plaintiff has not come forward with sufficient evidence suggesting there have been subsequent denials of a request for a reasonable accommodation to constitute a "discrete act" that fell within the statute of limitations. Second, Plaintiffs' request seeks to require Defendant to allow Plaintiffs the ability to park in an area that has previously been prohibited by a previous state court order. Plaintiffs are effectively requesting a reconsideration of a request that a state court has previously prohibited. *See Jersey Heights*, 174

---

[20] In fact, the only evidence in the record of a subsequent request for a reasonable accommodation are two letters attached to Plaintiffs' Motion for Urgent Petition. The first letter, dated April 2, 2013 was written while litigation was pending with the SCHAC and HUD. No evidence of a denial of this request is included within the record. [ECF #57-11, Attachment 11]. The second letter, dated August 3, 2015, is referenced in the Complaint, and found as an attachment to Plaintiffs' Motion for Injunction, dated August 3, 2015. [ECF #57-12, Attachment 12]. Again, there is no evidence of a denial of this request. In fact, another letter filed by Plaintiffs indicates that Defendant *did not* deny that request but instead sought clarification as to that request. [ECF #57-11, Attachment 13]. Based on this letter provided by Plaintiffs, this Court notes that Plaintiffs' allegation that Defendant denied their request or did not respond to the request appears inaccurate.

F.3d at 189 ("every refusal to reconsider [a decision] does not revive the limitations period. To do so would upset the balance struck by the limitations period between the reasonable needs of individual claimants and the public interest in finality."). Accordingly, this Court agrees with the Magistrate Judge that Plaintiffs' current claims, which are brought pursuant to the FHA, are barred by the applicable statute of limitations.

This Court notes that Plaintiffs allege that Defendant has violated both state and federal fair housing laws. To the extent Plaintiffs allege any state law claims in this lawsuit, this Court declines to exercise jurisdiction over any remaining state law claims pursuant to 28 § U.S.C. 1367(c)(3),[21] and they are dismissed without prejudice.

### B. Plaintiffs' Motion for Urgent Petition for an Injunction

In the instant case, more recently Plaintiffs have also filed a motion seeking an injunction to compel Defendant to grant a reasonable accommodation to park near the front of the home located at the Property. A plaintiff seeking a preliminary injunction must establish all four of the following criteria: (1) that the plaintiff is likely to succeed on the merits, (2) that the plaintiff is likely to suffer irreparable harm in the absence of preliminary injunctive relief, (3) that the

---

[21] Within their motion for summary judgment, Defendant also argues that Plaintiffs' claims are barred by the judicial doctrine of *res judicata*. The doctrine of *res judicata* precludes litigants from asserting a claim after a judgment on the merits in a prior suit by parties on the same cause of action. *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991). The doctrine further prevents parties from asserting claims that were previously available to the parties. *Id.* Plaintiffs request this Court set aside a final order issued in state court, enjoin Defendant from refusing to allow Plaintiffs to park in her front yard, and award damages provided for under the Fair Housing Act. Plaintiffs have previously filed several lawsuits related to this same set of circumstances against Defendant. In fact, Plaintiffs have been held in contempt by a state court. [ECF #64, pp. 6-8]. Plaintiffs' response is that no court has previously decided whether Defendant violated the Fair Housing Act. The Magistrate Judge did not address this ground in the R&R, and therefore Plaintiffs have not objected to any recommendation regarding this ground. Because this Court is granting summary judgment based on the statute of limitations having expired, it is unnecessary to address this issue.

balance of equities tips in the plaintiff's favor, and (4) that the injunction is in the public interest. *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)). A plaintiff must make a *clear* showing that it is likely to succeed on the merits of its claim. *Winter*, 555 U.S. at 20-22. First, Plaintiffs have failed to make the proper showing to seek an injunction. Second, this motion is moot based on the Court's decision to grant summary judgment in favor of Defendant. Accordingly, Plaintiffs' motion for injunction is denied.

## Conclusion

The Court has thoroughly reviewed the entire record, including all pleadings and exhibits filed in this case. For the reasons provided above, this Court respectfully adopts the recommendation of the Magistrate Judge as modified herein. [ECF #62]. Defendant's motion for summary judgment [ECF #47] is **GRANTED** as to all federal claims brought by Plaintiffs. Plaintiffs' motion for injunction [ECF #57] is **DENIED**. To the extent Plaintiffs have brought any state law claims, the Court declines to exercise supplemental jurisdiction pursuant to 28 § U.S.C. 1367(c)(3), and these claims are dismissed without prejudice.

**IT IS SO ORDERED.**

Florence, South Carolina                            s/ R. Bryan Harwell
September 24, 2018                                   R. Bryan Harwell
                                                    United States District Judge